GERMAN SAVINGS & LOAN SOC. v. DORMITZER et al.

(Circuit Court of Appeals, Ninth Circuit. June 6, 1902.)

No. 780.

**1. REMOVAL OF CAUSES—JURISDICTION—ESTOPPEL.**

One by having case removed from state to federal court is not estopped from raising question of jurisdiction, on it appearing there was nothing to confer it on the federal court.

**2. SAME—DIVERSE CITIZENSHIP.**

Diverse citizenship authorizing removal of cause from state to federal court must exist at time suit is begun, as well as at time of removal, and must be made to appear.

**3. SAME—PETITION.**

Petition by one only of the defendants for removal of cause from state to federal court is insufficient.

**4. SAME—SEPARABLE CONTROVERSY.**

There is not a separable controversy between plaintiffs and defendant bank, justifying removal of cause from state to federal court on the ground of separate controversy between citizens of different states, the complaint alleging that plaintiffs being minors, and owning land in common with defendant T., defendants fraudulently procured a sale to be made and ratified by the probate court of plaintiffs' interest to defendant T., to be for cash, but in which no payment was made; that defendant T. then gave defendant bank a mortgage; that defendants had ever since been in possession; that afterwards a decree was obtained adjudging the probate proceedings void, and plaintiffs owners of an undivided half,—and the prayer being for an accounting, a partition, and a lien on defendants' interest for rents and profits.

Appeal from the Circuit Court of the United States for the Eastern Division of the District of Washington.

Struve, Allen, Hughes & McMicken, Happy & Hindman, and W. S. Goodfellow, for appellant.

Lucius B. Nash, Lucius G. Nash, James Dawson, and Frederick W. Dewart, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This suit was commenced in a state court of Washington, from which, on the petition of the appellant, it was transferred to the circuit court of the United States for the district of Washington, in which court it was tried on its merits, and a decree entered therein, from which decree the German Savings & Loan Society took and was allowed an appeal. Upon the calling of the case for argument in this court, counsel for the appellant announced that they had just discovered that the suit was improperly removed from the state court, and that the circuit court had not, nor has this court, any jurisdiction over it, for the reason that the case presented no separable controversy, nor did such diverse citizenship exist as would confer jurisdiction upon the federal court. As the case

¶ 4. Separable controversy as ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Mineral Co., 35 C. C. A. 155.

was removed from the state court upon the petition of the appellant, it is insisted on the part of the appellees that it is estopped from now raising the question of jurisdiction; counsel relying largely upon the following clause of the opinion of the supreme court in the case of Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127, 40 L. Ed. 263:

"The case having been removed to the circuit court upon petition of defendant, it does not lie in its mouth to claim that such court has no jurisdiction of the case, unless the court from which it was removed had no jurisdiction."

This language must be read in connection with the facts of the case about which the court was speaking. It is never permissible to select certain sentences or paragraphs of an opinion, detach them from their context, and give them universal application. In the case of Railroad Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462, and in other cases there cited, the supreme court declared the rule to be inflexible and without exception that the judicial power of the United States cannot be exerted in a case to which it does not extend, even if both parties desire it to be exerted; and that the court "must, of its own motion, deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." See, also, Craswell v. Belanger, 6 C. C. A. 1, 56 Fed. 529, and numerous cases there cited. We do not think that the supreme court had any intention of changing this long and well-established rule by the concluding clause of its opinion in the case of Cowley v. Northern Pacific Railroad Company, above quoted.

There are, therefore, but two questions for consideration on this motion; that is to say, whether the requisite diverse citizenship or the requisite separable controversy existed to confer jurisdiction on the United States circuit court. And, in respect to the first, the law is that the difference of citizenship, on which the right of removal depends, must have existed at the time when the suit was begun, as well as at the time of removal. Gibson v. Bruce, 108 U. S. 561, 2 Sup. Ct. 873, 27 L. Ed. 825; Railroad Co. v. Swan, supra. In neither the complaint filed in the state court nor in the petition presented by the German Savings & Loan Society for its removal to the federal court did it appear of what state were the plaintiffs Dora May Dormitzer or William L. Tull citizens, and as, according to the uniform decisions of the federal courts upon this point, the jurisdiction of the circuit court fails unless the necessary citizenship is made to appear, the presumption is necessarily against it. Grace v. Insurance Co., 109 U. S. 278, 283, 3 Sup. Ct. 207, 27 L. Ed. 932; Robertson v. Cease, 97 U. S. 646, 24 L. Ed. 1057; Railroad Co. v. Swan, and Craswell v. Belanger, supra. It is true that, prior to the filing

of the petition for the removal of the suit, the court had, on motion of the plaintiffs Dormitzer and Tull, and against the protest of their coplaintiffs, made and entered an order dismissing them from the suit; but their coplaintiffs thereupon made a motion that the order be vacated and set aside, which latter motion, the record shows, was pending and undetermined in the state court at the time of the petition for and transfer of the cause to the circuit court, and was by that court subsequently granted. They were never, therefore, finally dismissed as parties plaintiff. Moreover, the petition for the transfer of the suit was only made by one of the defendants thereto,—the German Savings & Loan Society,—which is insufficient. Railroad Co. v. Martin, 178 U. S. 245, 248, 20 Sup. Ct. 854, 44 L. Ed. 1055; Yarnell v. Felton, 102 Fed. 369, 370, and cases there cited.

The contention on the part of the appellees that the defendants Francis M. Tull and Ernest B. Tull were nominal defendants only cannot be sustained, for the reason hereinafter stated. Jurisdiction in the circuit court over the suit cannot, therefore, be sustained on the ground of diverse citizenship of the parties, and, as a matter of fact, the removal was not sought on that ground. The petition proceeded upon the ground that there was a separable controversy, but an examination of the complaint very clearly shows that there was nothing of the kind in the case. In order to justify a removal on the ground of a separate controversy between citizens of different states, said the supreme court in Torrence v. Shedd, 144 U. S. 530, 12 Sup. Ct. 727, 36 L. Ed. 528, "there must, by the very terms of the statute, be a controversy 'which can be fully determined as between them'; and by the settled construction of this section, the whole subject-matter of the statute must be capable of being finally determined as between them, and complete relief afforded as to the separate cause of action, without the presence of others originally made parties to the suit." There are many decisions of the supreme court to the same effect, a number of which are cited in the opinion from which the above quotation is taken, and in the opinion of this court in the case of Craswell v. Belanger, supra.

The important allegations of the complaint in the suit under consideration are the following: That the defendant Francis M. Tull and one Lucy A. Tull were husband and wife on the 18th of July, 1888, and were then seised in fee of certain community property situated in the city and county of Spokane, Wash., and specifically described in the complaint, on which day Lucy A. Tull died, leaving surviving her husband, the defendant Francis M. Tull, and three children, issue of herself and her said husband, namely, the plaintiff Dora May Dormitzer, intermarried with one Paul Dormitzer, the plaintiff William M. Tull, and the defendant Ernest B. Tull; that these children were the only issue of Lucy A. Tull, and at the time of her death all of them were minors; that they inherited their mother's undivided one-half of the property mentioned, and thereupon became seised in fee of the undivided half thereof, share and share alike, and that their father, the defendant Francis M. Tull, remained the owner in fee of the other undivided one-half of the property; that shortly after the death of Lucy A. Tull, the defendants German Savings &

Loan Society and Francis M. Tull, conspiring and agreeing together, and with the intent to cheat the said minor heirs, and to acquire their interest in the property in question, did fraudulently institute certain proceedings in the probate court of Spokane county, Wash., whereby an order was procured appointing one P. D. Tull guardian of the minors, and a further order directing and empowering the said guardian to sell the interest of the minors in the property, in pursuance of which he did thereafter make a pretended sale of their interest to the defendant Francis M. Tull; that the said P. D. Tull and the defendants Francis M. Tull and German Savings & Loan Society did thereafter, by fraud, deceit, and misrepresentation, procure an order from the probate court ratifying and confirming the pretended sale; that the defendants Francis M. Tull and German Savings & Loan Society fraudulently procured the said P. D. Tull to, and that he did, fraudulently make, execute, and deliver deeds purporting to convey the interests of the minors in the property to the defendant Francis M. Tull; that the aforesaid order of sale directed the guardian to sell the interests of the minors for cash, but that the said P. D. Tull, in willful disregard of its provisions, sold the same on credit, and falsely and fraudulently reported to the probate court that it was made for cash, and upon that representation procured from the court a confirmation of said sale; that the sole consideration received by the said guardian was mortgages from the defendant Francis M. Tull on the property, which mortgages were not executed until after the confirmation of the sale, and which mortgages were shortly thereafter canceled by the guardian, as hereinafter stated; that immediately after the alleged sale and the execution of the deeds in pursuance thereof to the said Francis M. Tull by the said P. D. Tull, the defendant German Savings & Loan Society, pursuant to the alleged intent to cheat and defraud the minors, loaned to the defendant Francis M. Tull $120,000, and took from him mortgages covering the property in question as security, after which the guardian, P. D. Tull, released and satisfied of record the mortgages executed to him by the defendant Francis M. Tull in consideration of the deeds to the minors' interests in the property, without the payment of any part of the money for the security of which they were executed, and new mortgages were executed in their places, all of which, it is alleged, was done by the procurement of the defendants German Savings & Loan Society and Francis M. Tull, for the purpose of making and leaving the aforesaid mortgages of the defendant German Savings & Loan Society the prior and superior liens upon the property, under a foreclosure of which it is alleged that the defendant German Savings & Loan Society acquired title to all of the said property, free of any right, title, or interest on the part of the said minors; that by reason of the aforesaid acts of the defendants Francis M. Tull and German Savings & Loan Society and of the said P. D. Tull, the defendants Francis M. Tull and German Savings & Loan Society have ever since the 28th day of November, 1888, been, and now are, in the exclusive possession and control of the said property, and of its rents, issues, and profits, and have denied the rights of the plaintiffs Dora May Dormitzer and William L.

Tull and the defendant Ernest B. Tull, who were therefore compelled to, and did, employ the plaintiffs Nash & Nash, upon terms set out in the complaint, but not necessary to be here stated, to obtain relief from the said fraudulent acts; that the plaintiffs Nash & Nash did institute proceedings in behalf of the children in one of the courts of the state of Washington to annul the aforesaid probate proceedings and orders, which resulted in a decree adjudging null and void the aforesaid proceedings of the guardian, and decreeing the plaintiffs Dora May Dormitzer and William L. Tull and the defendant Ernest B. Tull to be the owners of the unincumbered, undivided one-half of all of the said property; that for their services in that behalf the plaintiffs Nash & Nash were entitled to receive certain specified portions of the children's interests in the property, for which, under the provision of a statute of the state, they were entitled to a lien thereon, which they duly filed; that under and by virtue of the alleged fraudulent acts, the defendants Francis M. Tull and German Savings & Loan Society have ever since July 18, 1888, had the exclusive use and occupation of the said real estate, and have collected, used, and appropriated the entire rents, issues, and profits thereof, and have still such exclusive use and occupation of said real estate, and do still collect, use, and appropriate the rents, issues, and profits thereof, at all times denying to the plaintiffs Dora May Dormitzer and William L. Tull and the defendant Ernest B. Tull any rights therein or thereto. The complaint also set out the alleged rights of each of the plaintiffs and of the defendant Ernest B. Tull in and to the property, and its prayer was, among other things, that the respective rights and interests of the plaintiffs and defendant, both in and to said real estate, as well as in and to the rents, issues, and profits thereof, be ascertained and determined; that an accounting be had, and the defendants Francis M. Tull and German Savings & Loan Society be required to state fully the amounts of money received by them, or in their behalf, in respect to said estate, and be decreed to pay to the children one-half thereof, or that the fair rental value of the property from July 18, 1888, be ascertained and fixed, and the children be awarded judgment for the undivided one-half thereof, and that in either event they be decreed a lien on the interests of the defendants in the property as security for such amounts; that the said real estate be partitioned between the parties to the suit according to their respective interests and rights, and, in the event partition cannot be made without prejudice or loss to the owners, that the property be sold under the direction of the court, and the net proceeds thereof be divided in accordance with the rights of the respective parties, for the appointment of a receiver or receivers of the property pending the litigation, and for costs and other relief.

It needs no argument to show that, under the allegations of the complaint, the defendant Francis M. Tull is an indispensable party to the suit. The frauds of which the plaintiffs complain are largely his alleged frauds, the accounting the plaintiffs seek is of moneys alleged to have been received by him and the defendant German Savings & Loan Society, and the property they seek to recover or to have partitioned or sold is property in which he is alleged to have

an interest, and which is alleged to be in the possession of him and his codefendant German Savings & Loan Society. Nothing more need be said to show that no controversy is presented which is capable of being fully or finally determined as between plaintiffs and the defendant German Savings & Loan Society without the presence of the defendant Francis M. Tull, even if the defendant Ernest B. Tull could be regarded as a mere nominal party. In whatever aspect the case presented can be looked at, it is an entirety, and presents no separable controversy between the plaintiffs and the defendant German Savings & Loan Society.

We think it very clear that no case for removal was presented, and that the circuit court was without jurisdiction of it. The judgment of the circuit court is therefore reversed, with costs against the plaintiff in error, and the case remanded, with directions to the circuit court to enter judgment against the plaintiff in error for the costs incurred in the circuit court and in this court, and thereupon to remand the case to the state court from whence it came.